IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-219

No. COA20-199

Filed 18 May 2021

Mecklenburg County, Nos. 13CRS248980, 13CRS048456

STATE OF NORTH CAROLINA

v.

MICHAEL DORTCH WASHINGTON

Appeal by Defendant from judgments entered 22 May 2019 by Judge David A. Phillips in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 April 2021.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Ryan F. Haigh, for the State-Appellee.*
>
> *Sean P. Vitrano for Defendant-Appellant.*

COLLINS, Judge.

Defendant Michael Dortch Washington appeals from the trial court's judgments entered upon his convictions for first-degree murder and possession of a firearm by a felon. Defendant contends that the trial court erred by admitting certain evidence and instructing the jury on the doctrine of recent possession. We discern no reversable error.

## I.  Background

¶ 2        Defendant was indicted on 16 December 2013 for the first-degree murder of Oren Reed and possession of a firearm by a felon. Defendant was initially tried in December 2016, but the case resulted in a mistrial after the jury deadlocked on both charges. Defendant's second trial began on 13 May 2019 and the evidence presented at Defendant's trial tended to show the following:

¶ 3        On 20 November 2013, Clinton Townsend received a call while he was at work that there had been a break-in at his home. When he arrived home, he discovered his side door had been kicked in and his door frame was broken. A pearl-handled .22 caliber revolver and a container of .22 caliber bullets were missing from a nightstand in his bedroom.

¶ 4        The next day, 21 November, Mary Nash stopped by her nephew Oren Reed's home to check on him. When she approached Reed's backdoor, she noticed that the door frame was splintered and saw glass and bullet shells on the ground. When she looked into the residence, she saw Reed laying in a pool of blood by the rear doorway and contacted law enforcement. He was pronounced dead at 5:07 p.m.

¶ 5        When law enforcement arrived at Reed's residence, they collected twenty-three spent shell casings from inside and outside the home, four projectiles left within bullet holes at the residence, and two live rounds. All casings appeared to be the same caliber and were marked with a "C" headstamp. Touch and blood swabs were collected from the interior and exterior of the broken door for DNA testing.

¶ 6    On the morning of 25 November, Jacqueline Randolph observed an unknown male individual walking up and down her driveway multiple times while looking around her property. She called 911 after he rang her doorbell but left when he saw that Randolph was home. Officer Robert Roberts responded to the call and saw an individual, later identified as Defendant, approximately half a mile from the Randolph residence who matched the description given in the 911 call.

¶ 7    Roberts attempted to speak with Defendant, who turned and ran before being apprehended by another officer. A firearm with a pearl handle, which was loaded with five live rounds and one spent cartridge in the cylinder, was recovered from Defendant. This firearm was identified by Townsend as the one stolen from his home on 20 November 2013. Defendant was carrying a backpack that contained jewelry, a hat, and 27 live rounds of ammunition bearing a "C" headstamp. Defendant was interviewed by Detective Matthew Hefner and a buccal swab was taken for DNA comparison and analysis.

¶ 8    Chief Medical Examiner Dr. Christopher Gulledge performed an autopsy on Reed. Dr. Gulledge determined that Reed was shot six times with the cause of death being a gunshot wound to the back. Dr. Gulledge also collected three bullets from Reed's body for further examination.

¶ 9    Firearms examiner Gene Rivera examined the firearm recovered on Defendant and compared it to the 23 spent cartridges recovered from Reed's residence. Rivera

determined that 22 of the 23 cartridges found were fired by the firearm found on Defendant. Rivera reviewed three bullets and two fragments that were taken from Reed's body and determined that two of the bullets shared similar class and individual characteristics as bullets fired from the firearm found on Defendant. Rivera also examined the bullet fragments recovered from the crime scene and determined that all but two, which were too damaged to examine, had markings consistent with being fired from the firearm found on Defendant.

¶ 10 Eve Rossi, DNA team leader with the Charlotte-Mecklenburg Police Department, compared Defendant's DNA with DNA swabs taken from the trigger of the firearm and from the crime scene. Rossi determined that DNA found on the trigger of the firearm matched Defendant's DNA profile, and DNA found on the interior handle of Reed's side screen door and inside door was consistent with Defendant's DNA profile.

¶ 11 Defendant presented evidence and testified on his own behalf as follows: He met Reed through a friend named Demario on 19 November 2013 and the three of them stayed at Reed's house on the 20th. He purchased a firearm from Demario and shot it in Reed's backyard for fun. He was awakened on the 21st by an altercation between Reed and Demario and saw Demario grab the firearm and shoot Reed. Demario and Defendant fled from Reed's home and Demario gave the firearm back to Defendant. When he knocked on Randolph's door on 25 November 2013 he planned

on kicking in the door and seeing what small valuables he could take.

¶ 12 Defendant called Sedrick Lockhart, a neighbor who lived across the street from Reed, as a witness. Lockhart testified that he saw Reed sweeping glass into a trashcan between 6:30 and 7:00 a.m. on 21 November 2013.

¶ 13 Ultimately, the jury found Defendant guilty of both offenses. The jury found Defendant guilty of first-degree murder, under both the theory of malice, premeditation, and deliberation and felony murder, and guilty of possession of a firearm by a felon. The trial court sentenced Defendant to life imprisonment without the possibility of parole for his first-degree murder conviction and a consecutive sentence of 17-30 months for his possession of a firearm by a felon conviction. Defendant gave timely oral notice of his appeal.

## II. Analysis

¶ 14 Defendant contends that the trial court: (1) committed plain error by admitting evidence of the break-in at the Townsend residence; (2) erred by admitting evidence of Defendant's behavior at the Randolph residence; and (3) committed plain error by instructing the jury on the doctrine of recent possession.

### 1. *Townsend Evidence*

¶ 15 Defendant argues that the trial court committed plain error by admitting evidence of the Townsend residence break-in because this evidence was: (1) not relevant under Rule 401; (2) improper character evidence under Rule 404(b); and (3)

unduly prejudicial under Rule 403.  We disagree.

¶ 16        Defendant acknowledges his failure to object to the challenged testimony relating to the break-in at the Townsend residence but specifically and distinctly argues plain error on appeal.  *See* N.C. R. App. P. 10(a)(4).  "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial" which "had a probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence,* 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (quotation marks and citations omitted).  A fundamental error is one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings" *Id.* (quotation marks and citations omitted).

        *a.  Rule 401*

¶ 17        Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  N.C. Gen. Stat. § 8C-1, Rule 401 (2019). Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  N.C. Gen. Stat. § 8C-1, Rule 403 (2019).

¶ 18        Evidence of the Townsend break-in was relevant under Rule 401 because it tended to show how Defendant gained possession of the murder weapon.  When a

defendant denies involvement in a crime, as Defendant did at trial, "evidence tending to connect [the] accused with the crime" is relevant circumstantial evidence. *State v. Whiteside,* 325 N.C. 389, 397, 393 S.E.2d 911, 915 (1989) (citation omitted). The jury determines the amount of weight to give this evidence. *Id.*

### b. *Rule 404(b)*

¶ 19 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith[,]" but may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, [or] identity[.]" N.C. Gen. Stat. § 8C-1, Rule 404(b) (2019). "Rule 404(b) is a clear general rule of inclusion[,]" and evidence of other crimes, wrongs, or acts "is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." *State v. Beckelheimer,* 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012) (quotation marks and citations omitted). Although the rule specifically lists purposes for which evidence of prior acts may be admitted, this list "is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." *State v. White,* 340 N.C. 264, 284, 457 S.E.2d 841, 852-53 (1995) (citation omitted).

¶ 20 Evidence of other crimes, wrongs, or acts committed by a defendant may be admissible under Rule 404(b) if it "establishes the chain of circumstances or context of the charged crime." *White,* 340 N.C. at 284, 457 S.E.2d at 853. "Such evidence is

admissible if the evidence . . . serves to enhance the natural development of the facts or is necessary to complete the story of the charged crime for the jury." *Id.* (citation omitted). Prior acts are also admissible if "there are some unusual facts present in both crimes that would indicate that the same person committed them." *Beckelheimer,* 366 N.C. at 131, 726 S.E.2d at 159 (quotation marks and citation omitted). These similarities need not "rise to the level of unique and bizarre." *Id.* (quotation marks and citation omitted).

¶ 21          Here, admission of evidence of the Townsend residence break-in was necessary for "the natural development of the facts and to complete the story of this murder for the jury[,]" and there were substantial similarities between the two incidents. *White,* 340 N.C. at 284, 457 S.E.2d at 853 (citation omitted). The Townsend residence was broken into through the side door when no vehicles were in the driveway and a revolver with a pearl handle was stolen. The next day, the Reed residence was broken into through the back door when no vehicles were in the driveway. The firearm stolen from the Townsend residence was used to murder Reed. Evidence of the Townsend break-in allowed the jury to understand how Defendant came to possess the murder weapon and how long it had been outside the possession of its original lawful owner. This evidence also explained why the legal gun owner was not considered a suspect and showed the thoroughness of law enforcement's investigation. Accordingly, Rule 404(b) did not require its exclusion because it was probative for reasons other than

Defendant's propensity to commit breaking and entering.

### c. *Rule 403*

¶ 22 We decline review of whether Rule 403 barred the admission of evidence from the Townsend break-in because "the balancing test of Rule 403 is review by this court for abuse of discretion, and we do not apply plain error 'to issues which fall within the realm of the trial court's discretion.'" *State v. Cunningham,* 188 N.C. App. 832, 837, 656 S.E.2d 697, 700 (2008) (quoting *State v. Steen,* 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000)).

¶ 23 Accordingly, the trial court did not err, much less commit plain error, by allowing the admission of evidence of the Townsend break-in.

## 2. *Randolph Evidence*

¶ 24 Defendant next argues that the trial court erred by admitting Randolph's testimony describing Defendant's behavior on 25 November 2013 at Randolph's residence, because Defendant's actions at Randolph's residence were not sufficiently similar to the break-in at the Reed residence to establish either a motive for breaking into Reed's residence or his identity as Reed's killer.

¶ 25 Defendant contends that he preserved this issue by objecting to the introduction of Randolph's testimony at trial. A careful review of the record shows that, although Defendant objected to "questioning" regarding the events on 25 November 2013, he did not object to the admission into evidence of the audio tape of

the 911 call made by Randolph or the transcript of that 911 call. The audio tape of the 911 call and the transcript included the relevant facts included in Randolph's testimony.

"It is well established that a criminal defendant loses the benefit of an objection when the same or similar evidence is later admitted without objection." *State v. Robinson*, 346 N.C. 586, 603, 488 S.E.2d 174, 185 (1997) (citation omitted). Accordingly, as "Defendant did not object to this testimony at trial and has not argued in his brief that admission of this evidence amounts to plain error. . . . we will not review this contention." *State v. Williams*, 363 N.C. 689, 703, 686 S.E.2d 493, 502 (2009) (citing N.C. R. App. P. 10(c)(4)).

### 3. *Jury Instructions*

Defendant finally argues that the trial court committed plain error by instructing the jury on the doctrine of recent possession. Specifically, Defendant argues that the trial court erred by instructing the jury on the doctrine of recent possession because "it was not relevant to the issue of whether [Defendant] broke into Oren Reed's house and killed Reed[,]" and "likely caused the jury to convict [Defendant] of felony-murder based on its perception that he committed the break-in at the Townsend home."

Defendant acknowledges his failure to object to the challenged jury instruction at trial but specifically and distinctly argues plain error on appeal. *See* N.C. R. App.

P. 10(a)(4). We thus review this issue to determine whether "a fundamental error occurred at trial" that "had a probable impact on the jury's finding that the defendant was guilty." *Lawrence,* 365 N.C. at 518, 723 S.E.2d at 334 (citation omitted). "[W]hen the plain error rule is applied, it is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *State v. Odom,* 307 N.C. 655, 660-61, 300 S.E.2d 375, 378 (1983) (quotation marks and citation omitted).

¶ 29 The doctrine of recent possession allows the jury to infer that the possessor of recently stolen property stole the property. *State v. Joyner,* 301 N.C. 18, 28, 269 S.E.2d 125, 132 (1980); *see State v. Pickard,* 143 N.C. App. 485, 487, 547 S.E.2d 102, 104 (2001). This inference is "to be considered by the jury merely as an evidentiary fact along with other evidence in the case, in determining whether the State has carried the burden of satisfying the jury beyond a reasonable doubt of the defendant's guilt." *State v. Barnes,* 345 N.C. 184, 241, 481 S.E.2d 44, 76 (1997) (quotation marks and citations omitted).

¶ 30 Presuming, *arguendo*, the trial court erred by instructing the jury that it could consider the doctrine of recent possession in deciding whether or not Defendant was guilty of first-degree murder, Defendant has failed to show that the challenged instruction had a probable impact on the jury's finding Defendant guilty of first-degree murder.

The jury found Defendant guilty of first-degree murder on the basis of malice, premeditation, and deliberation and on the basis of felony murder. "Premeditation and deliberation is one theory by which one may be convicted of first-degree murder; felony murder is another such theory. Criminal defendants are not convicted or acquitted of theories; they are convicted or acquitted of crimes." *State v. Thomas,* 325 N.C. 583, 593, 386 S.E.2d 555, 560-61 (1989) (citations omitted).

Defendant does not challenge his first-degree murder conviction based on malice, premeditation, and deliberation. Accordingly, even if the trial court's jury instruction on the doctrine of recent possession could have caused the jury to improperly convict Defendant of felony murder, the instruction did not have a probable impact on the jury's finding Defendant guilty of first-degree murder because the jury found Defendant guilty of first-degree murder based on malice, premeditation, and deliberation. *See State v. McLemore,* 343 N.C. 240, 249, 470 S.E.2d 2, 7 (1996) ("Although the defendant should not have been convicted of felony murder, the verdict cannot be disturbed if the evidence supports a conviction based on premeditation and deliberation."); *State v. Cooper,* 219 N.C. App. 390, 394, 723 S.E.2d 780, 783 (2012) ("[E]ven if the trial court's jury instruction was in error and that error did change the jury's verdict as to the finding of deliberation, the error would still be harmless beyond a reasonable doubt because the jury's verdict was based on two separate, independent grounds."); *State v. Goode,* 197 N.C. App. 543,

553, 677 S.E.2d 507, 514 (2009) (discerning no plain error in defendant's conviction for first-degree murder because even if the trial court erred by instructing the jury on felony murder, "the jury found Defendant guilty of first degree murder under both theories[.]"); *State v. Mays,* 158 N.C. App. 563, 577, 582 S.E.2d 360, 369 (2003) ("Since defendant was found guilty of first degree murder based on both the theories of premeditation and deliberation and felony murder, any error in submitting the felony murder instruction was harmless."). Defendant's argument is without merit.

## III. Conclusion

The trial court did not err by admitting evidence of the Townsend residence break-in. Defendant's challenge to the admission of evidence of his behavior at the Randolph residence was not preserved for appellate review. The trial court did not plainly err by instructing the jury on the doctrine of recent possession.

NO ERROR IN PART; NO PLAIN ERROR IN PART.

Judges TYSON and CARPENTER concur.